# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

RICHARD BROCK,

     Plaintiff,

                                     Case No.

v.

BDO USA, P.C., also known as
BDO USA, P.C., CORP., formerly
known as BDO USA, LLP, and
BDO USA, LLP PARTNERSHIP
AGREEMENT ARTICLE VII,
VIII AND IX PLAN,

     Defendants.

_____/

## COMPLAINT

Plaintiff, RICHARD BROCK ("Brock"), by and through the undersigned counsel, and pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a), hereby brings this action against Defendants, BDO USA, P.C., also known as BDO UA, P.C., Corp., formerly known as BDO USA, LLP ("BDO") and BDO USA, LLP PARTNERSHIP AGREEMENT ARTICLE VII, VIII, AND IX PLAN (the "BDO Retirement Plan") (collectively, "Defendants"), to recover retirement benefits due and owing to him, and in support states as follows:

## INTRODUCTION

This is a lawsuit seeking immediate payment of vested retirement benefits wrongfully withheld by BDO. For over forty (40) years, Brock worked as an accountant and partner for BDO or his preceding firm Lafaye, Brock and Associates Certified Public Accountants, P.A. ("LBA"). Brock earned significant deferred compensation which was eventually converted into the BDO Retirement Plan when LBA was acquired by BDO in November of 2016. From 2016 until the end of 2019, Brock faithfully served as a BDO partner in BDO's Jacksonville, Florida office. At the end of 2019, Brock retired and began receiving his retirement benefits. Rather than continuing to collect these benefits that Brock earned throughout his long career, Brock was shocked to learn in October of 2023 that BDO had suddenly and without warning withheld his benefits, vaguely alleging some breach of the Partnership Agreement. Following Brock's pleas for an explanation and reinstatement of his hard earned benefits, Brock was then subjected to an unfair claims and appeals procedure, during which time he was never even provided copies of the documents BDO apparently relied upon to deprive him of his benefits. When BDO finally provided Brock the documents that formed the basis of their extraordinary decision, almost a year after his retirement benefits were initially withheld, Brock learned that BDO took his retirement benefits because of just two (2) emails. The first email was between Brock and his longtime friend regarding the

departure of some wealth advisors from BDO and the other was an email concerning Brock's *brother* dated eighteen days after BDO actually denied Brock his retirement benefits. Despite a complete lack of basis and Brock's fervent appeal, BDO continues to withhold retirement benefits Brock earned over a long career, largely his own deferred income.

Therefore, under the authority of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132, Brock brings this action to recover his retirement benefits which have been wrongfully revoked by Defendants.

## PARTIES

1.      Plaintiff, RICHARD BROCK, is an individual who at all time material hereto was a resident of Duval County, Florida.

2.      Defendant, BDO is a corporation organized and existing under the laws of the State of Virginia, with its principal place of business in Chicago, Illinois, and is otherwise authorized to do business within the State of Florida as BDO USA, P.C., CORP. BDO converted from a partnership to a professional corporation in 2023. BDO is the plan administrator and plan sponsor of the BDO RETIREMENT PLAN.

3.      Defendant, BDO RETIREMENT PLAN, is an "employee pension benefit plan" as that term is defined in ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), and is a legal entity capable of being sued pursuant to ERISA § 502(d), 29 U.S.C. § 1132(d).

4.     A plan of deferred compensation which is both unfunded and maintained by the employer to provide deferred compensation to a select group of management or highly compensated employees is referred to as a "top hat plan." 29 U.S.C. §§ 1051(2), 1081(a)(3), and 1101(a)(1). Top hat plans are subject to reporting and disclosure requirements under 29 U.S.C. §§ 1021-1031, and are subject to Part 5 of ERISA Title I, which includes ERISA's administration and enforcement provisions. 29 U.S.C. §§1131-1145.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this matter pursuant to ERISA §502(a), (e)(1) and (f), 29 U.S.C. §§ 1132 (a), (e)(1) and (f), and 28 U.S.C. § 1331.

6.     Brock is a participant of the BDO Retirement Plan provided in Article VII of the Amended and Restated Partnership Agreement (the "Partnership Agreement") for purposes of 29 U.S.C. § 1002(7) and, therefore, has standing to bring this ERISA § 502(a)(1)(B) cause of action pursuant to ERISA § 502(e)(l).

7.     Venue is proper in this district pursuant to 28 USC §1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to ERISA §502(e), 29 U.S.C. § 1132(e)(2) because the breach occurred in this district.

## FACTUAL BACKGROUND

### I.    Brock's Career and BDO's Forfeiture of his Retirement Benefits.

8.      For more than forty (40) years, Brock served as a partner of the firm of LBA, building up the practice.

9.      During that time, LBA wealth management advisors managed investments on Brock's behalf, some of which Brock intended to fund his retirement benefits and savings.

10.     In November of 2016, LBA was acquired by BDO, and Brock and his partners became partners of BDO as a result.

11.     At the time BDO acquired LBA, BDO was governed by its Amended and Restated Partnership Agreement, dated April 15, 2016 (the "Partnership Agreement")[1] which included contractual provisions related to BDO Retirement Plan benefits that Brock would be entitled to receive if certain conditions were met. *See* Ex. A, p. 35.[2]

---

[1] The Partnership Agreement referenced herein shall refer to the agreement as amended from time to time up until the point Brock retired from BDO on December 31, 2019, at which time the version of the agreement then in effect would govern. To the extent there is any dispute as to which version of the agreement controls, and particularly whether the September 19, 2020 version controls, it does not appear there are any material differences to the provisions of the Partnership Agreement relevant to Brock's claim for benefits between the April 15, 2016 version and the September 19, 2020 version.

[2] As set forth below, Brock appealed BDO's denial of his claim for benefits. A true and correct copy of Brock's Appeal is attached hereto as **Exhibit "A,"** and include all of the documents referenced in this Complaint.

12.     Brock and BDO entered into three supplemental agreements: (1) the First Supplemental Agreement, *see* Ex. A, p. 82; (2) the Second Supplemental Agreement and Schedule A thereto, *see* Ex. A, p. 114; and (3) the Third Supplemental Agreement, *see* Ex. A, p. 130.

13.     As part of the Partnership Agreement, the benefits Brock had already accumulated while at LBA were converted into the BDO Retirement Plan. The majority of Brock's benefits had been earned and credited prior to BDO acquiring LBA.

14.     After faithfully serving as a BDO partner from 2016 until the end of 2019, Brock retired from BDO on December 31, 2019. Brock was fully vested and entitled to full payment of his retirement benefits as of his retirement date.

15.     As a retired partner of BDO, Brock was provided credit for prior service



Thereafter,

16.

17.     On October 13, 2023, the Chief Operating Officer of BDO, Stephen R. Ferrara, sent a "Notice of Forfeiture of Retirement Benefits" to Brock, which provided as follows:

> This letter is in regard to your obligations as a former BDO USA ("BDO") Partner pursuant to the terms of the BDO USA, LLP Partnership Agreement, as amended from time to time ("Partnership Agreement") under which you retired.
>
> The Board of Directors has determined that you have forfeited your retirement benefits because you have engaged in conduct relating to BDO Wealth Advisors that has caused BDO financial loss or damage, constitutes competition with BDO, and adversely affects the independence, practice or profits of BDO.
>
> Accordingly, ███████████████████ you are no longer entitled to retirement benefits offered to you on the conditions set forth in the Partnership Agreement, or any other amounts that may be due to you. ████████████████

*See* Ex. A, p. 138.

18.     This communication from Ferrera came as a great shock to Brock, who was at a loss for the basis of BDO's extraordinary action in taking his retirement benefits.

19.     Seeking an explanation for BDO's actions, and in a desperate attempt to get his retirement benefits back, Brock sent a responsive correspondence on October 19, 2023 ("Forfeiture Response"). The Forfeiture Response explained Brock's concern that BDO was acting on incorrect information, that Brock never

violated the Partnership Agreement and that he takes his obligations to BDO very seriously. *See* Ex. A, p. 140.

20.    On November 13, 2023, Associate General Counsel of BDO, Erin Carney D'Angelo, sent a letter to Brock in response to his request for reinstatement of his retirement benefits. The letter stated, in pertinent part, as follows:

> Contrary to the representations in your letter, BDO is aware that you were **(i) speaking negatively about BDO and its transaction with Choreo to BDOWA clients and (ii) communicating with Matt Cochran and Kaitlyn Weatherly about BDOWA clients leaving BDOWA and joining Atlantic Edge, in each case resulting in damage to BDO.**
>
> Accordingly, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆ the Board has determined that you are no longer entitled to retirement benefits.

*See* Ex. A, p. 142.

21.    The allegations asserted by BDO in the above-referenced correspondence are untrue, and BDO acted on incorrect or false information in its decision to terminate Brock's retirement benefits.

22.    Ms. D'Angelo's letter references the fact that, three (3) years after Brock's retirement, BDO decided to sell its wealth management business to Choreo, LLC ("Choreo"). Several employees of BDO, including Matthew Cochran ("Cochran"), Kaitylyn Weatherly ("Weatherly"), and Jeffrey Albaneze ("Albaneze"), opposed joining Choreo and started their own registered investment advisory business called Atlantic Edge Wealth Management ("Atlantic Edge").

8

23.     During this time, Brock had no involvement with BDO or Atlantic Edge and was not involved with Cochran, Weatherly or Albaneze's decision to leave BDO and not join Choreo.

24.     At no time has Brock ever been a partner, employee or affiliate of Atlantic Edge, nor has Brock been otherwise associated with Atlantic Edge. Brock never received compensation or income from Atlantic Edge and has never had ownership interest or interest of any kind in Atlantic Edge.

25.     Most importantly, Brock did not compete with BDO, adversely affect BDO's profits, practice or independence, cause damage to BDO, or otherwise commit the acts alleged by BDO at the time his benefits were withheld.

## II.    *The Partnership Agreement and Claims and Appeals Procedures.*



9



10



29.    Brock did not violate his obligations in the Partnership Agreement.

30.    In the event of a claim for benefits, the review process is governed by the Benefit Claims and Appeals Procedures for the BDO USA, LLP Partnership Agreement Article VII, VIII, and IX Plan (the "Claims and Appeals Procedures"). *See* Ex. A, p. 162.

31.    The Claims and Appeals Procedures of the BDO Retirement Plan provide as follows:



11

32.    In the event of an appeal of a complete or partial denial of benefits, the

Claims and Appeals Procedures provide:



### III.    *The ERISA Claim.*

33.    Immediately after receiving the "Notice of Forfeiture of Retirement

Benefits" from BDO dated October 13, 2023, Brock sent his Forfeiture Response

to the BDO Board of Directors informing them that at no time had he "violated the

provisions set forth in the Amended and Restated Partnership agreement that would

provide a basis for forfeiture of [his] retirement benefits" and requesting that BDO

reinstate his retirement benefits.

34.    BDO did not treat Brock's initial October 19, 2023 Forfeiture Response

requesting BDO reinstate his retirement benefits plan as a claim for benefits under

the Partnership Agreement or Claims and Appeals Procedures.

35.    It was not until Brock retained legal counsel and sent another January

4, 2024 letter requesting documents pursuant to 29 U.S.C. § 1024(b)(4) and 29

12

U.S.C. § 1132(c)(1), that BDO eventually responded with an acknowledgement that a claim had been made.

36.    On February 9, 2024, BDO's counsel sent an email responsive to the January 4, 2024 letter. Among other things. BDO's response stated:

> The Plan Administrator interprets your January 4 letter as submitting an initial benefit claim under the Plan. Accordingly, the Committee will review your inquiry as an administrative benefit claim under the Plan's terms and ERISA.

*See* Ex. A, p. 155.

37.    On July 8, 2024, BDO denied Brock's request for reinstatement of his retirement benefits ("Denial"). *See* Ex. A, pp. 144-46.

38.    Astonishingly, the Denial never evaluated the merits of BDO's initial decision to forfeit Brock's retirement benefits. The Denial did not include a review of whether Brock's conduct actually violated the terms of the Partnership Agreement and indeed did not even identify any facts that BDO relied upon when deciding to send its Notice of Forfeiture of Retirement Benefits.

39.    Communications provided to Brock after the Denial make clear that BDO merely reviewed whether it had authority under the Partnership Agreement to make a forfeiture determination. *See* Ex. A, p. 157.

40.    The communication shows that in evaluating Brock's claim, BDO sought only to answer the following question:

> As Committee members, the question before you is as follows: Does the Plan language support the Board's authority to forfeit Brock's

13

retirement benefits under Section 6.1 of the Plan, upon the Board's determination that Brock engaged in conduct described in Section 7.8(b) and/or (10.9) of the BDO USA, LLP Partnership Agreement.

*See id.*

41.     On July 31, 2024, pursuant to the Claims and Appeals Procedures, Brock requested categories of documents relevant to the BDO Retirement Plan as well as all documents BDO relied upon in deciding to forfeit and terminate Brock's retirement benefits. *See* Ex. A, pp. 159-60.

42.     On August 23, 2024, BDO made a production of documents which did not include all documents it relied upon in making the decision to forfeit Brock's benefits. In fact, BDO's initial production included four documents: the Notice of Forfeiture of Retirement Benefits, copy of the Partnership Agreement, a copy of another, substantially similar, version of the Partnership Agreement, and the email transmitting the Notice of Forfeiture of Retirement Benefits. *See* Ex. A, pp. 167-68.

43.     On September 5, 2024, Brock sent another correspondence demanding production of all documentation requested in the initial July 31, 2024 letter. A true and correct copy of the September 5, 2024 letter is attached hereto as **Exhibit "B."**

44.     On September 30, 2024, BDO finally produced what it alleges BDO relied upon in making the determination to forfeit Brock's benefits. *See* Ex. A p. 260.

14

45.    Almost one full year after Brock received the Notice of Forfeiture of Retirement Benefits, BDO finally revealed that it had relied upon two (2) email exchanges in making its determination to terminate the retirement benefits.

46.    The first email, dated October 2, 2023, related to an exchange between Brock and his longtime friend and client, Richard Hardin ("Hardin"). *See* Ex. A, pp. 233-34.

47.    Hardin explained that he and his wife had developed a good relationship with  Cochran, Weatherly and Albaneze prior to their departure from BDO and planned to stay with them.

48.    In response, Brock informed Hardin that he planned to move his personal money to Atlantic Edge.

49.    Importantly, Brock's email response addressed only his own personal relationships and what he would do with his own assets. Brock did not counsel, advise, solicit, or request that Hardin do anything with his assets or accounts. At no time did Brock counsel, advise, solicit or request Hardin move his money from BDO or to Atlantic Edge.

50.    Testimony from Hardin and his wife, Cheryl Hardin, further shows that Brock played no role whatsoever in their decision to move their accounts from BDO to Atlantic Edge. Richard Hardin and Cheryl Hardin always intended to keep their

accounts with Weatherly due to their strong relationship with her and had made up their minds prior to communicating with Brock. *See* Ex. A, pp. 239-45.

51.    Brock did not cause the Hardins to leave BDO or otherwise cause BDO any financial loss or damage and therefore did not violate the Partnership Agreement.

52.    The second email exchange BDO apparently relied upon was dated October 31, 2023 and concerned Brock's own brother, James, and sister-in-law Rosanne. *See* Ex. A, p. 236.

53.    The email correspondence reflects that Brock told Albaneze and Weatherly that his brother and his brother's wife had not heard from them or received any paperwork, and asked whether they should call Albaneze and Weatherly.

54.    Testimony from James and Rosanne Brock confirms that they had previously made the decision to move their accounts from BDO to Atlantic Edge, and that they had no interest in keeping their accounts with BDO. *See* Ex. A, pp. 247-53.

55.    James and Rosanne Brock's testimony reflects that they had not heard from Weatherly and Albaneze since their departure from BDO, and James Brock simply requested his brother put them in contact with Albaneze and Weatherly so

16

that James and Rosanne Brock could reengage communication with them directly and complete the transfer of their accounts to Atlantic Edge.

56.    James and Rosanne Brock's testimony further confirmed that Brock played no part in their decision to stick with their longtime relationships with Weatherly and Albaneze, and that Brock never asked, requested, solicited, or insisted that they move their financial accounts anywhere, much less to Atlantic Edge.  Instead, James and Rosanne Brock made their decision to move their accounts from BDO to Atlantic Edge solely based upon their relationships with Weatherly and Albaneze.

57.    As with the Hardins, Brock's email correspondence did not counsel, advise, solicit, or request that James or Rosanne Brock do anything with their assets or accounts. At no time did Brock counsel, advise, solicit or request James or Rosanne Brock to move their money from BDO or to Atlantic Edge.

58.    Brock did not cause James or Rosanne Brock to leave BDO or otherwise cause BDO any financial loss or damage and therefore did not violate the Partnership Agreement.

59.    Notably, this October 31, 2023 email exchange regarding Brock's brother occurred eighteen (18) days *after* BDO sent the Notice of Forfeiture of Retirement Benefits and twelve (12) days after Brock's initial response.

17

*IV.*   **The ERISA Appeal.**

60.   On November 5, 2024, Brock appealed the Denial pursuant to the Claims and Appeals Procedures.

61.   BDO extended the sixty (60) day deadline for it to respond to Brock's appeal by another sixty (60) days before Brock and BDO subsequently agreed to further extend the deadline to June 14, 2025.

62.   During the appeal process, BDO requested interviews of James Rosanne Brock, as well as Richard and Cheryl Hardin. Those interviews produced no support for BDO, and only reinforced the fallacy of BDO's decision. Further, Mr. Hardin read his October 2, 2023 email exchange with Brock to BDO during the interview, providing further context for Brock's email to Hardin that BDO claims it relied upon to take his retirement benefits.

63.   On June 13, 2025, BDO sent a letter affirming its prior decision to forfeit Brock's retirement benefits (the "Decision Letter"). A true and correct copy of the Decision Letter is attached hereto as **Exhibit "C."**

64.   In the face of the mounting evidence Brock gathered during the appeals process, BDO hewed to the extremely narrow review of the initial forfeiture decision which was employed when Brock first raised his claim.

18

65.    The Decision Letter contended that the appeals committee was powerless to review the most impactful decision of BDO's board—that Brock violated the Partnership Agreement—and provides, in relevant part:

> Brock claims that the Committee failed to actually review and evaluate the Board's decision with respect to his violations of the Partnership Agreement. **Reviewing the merits of the Board's decision as it relates to** ███████████████████████ **the Partnership Agreement is not within the purview of the Committee but rather rests solely with the Board**. **The Committee then relies on the Board's determination** under the Partnership Agreement **when deciding benefit claims under the Plan document specifically when a claimant is alleging that "an error occurred in the calculation or administration of your benefit' under the Plan.**
>
> Section 6.1 of the Plan document ████████████████████████ ███████████████████████████████████ gives the discretion as to its interpretation on these matters to the Board. The Committee then has the responsibility to determine if there was an error in the calculation or administration of your benefit under the Plan. **The Committee**, based upon its review of all evidence submitted and interviews with the Former Clients, **has determined that the Board's determination that Brock's activity violated the Partnership Agreement and thus resulted in a forfeiture of Brock's benefits under the Plan did not result in an error in the calculation or administration of your benefit under the Plan**.

*See* Ex. C, p. 4.

66.    Removing all doubt about the futility of the claims and appeals process, the Decision Letter states:

> As such the Committee does not have the authority to overturn the Board's decision as it relates to the Partnership Agreement but rather only has the authority to determine if there is an error in the calculation or administration of benefits under the Plan, in light of the Board's determination with respect to the Partnership Agreement.

*See* Ex. C, p. 5.

67.    BDO's entire claim and appeals process is hollow, restricted only to determining whether the BDO Board's decision resulted in an error in calculating or administrating the benefit, whatever that may mean.

68.    BDO's claim and appeals process does not allow for review of whether BDO's decision was made in error or as the result of an error.

69.    As a result, throughout the entirety of BDO's claim and appeals process, no one ever examined whether Brock's benefits should have been terminated in the first place and instead "relie[d] on the Board's determination under the Partnership Agreement when deciding" Brock's claim.

70.    A fair claim and appeals process, and one permissible under federal law, would have concluded early on that the decision to terminate Brock's retirement benefits *is an error in and of itself.*

71.    Brock's conduct in no way constitutes a breach of the Partnership Agreement or otherwise warrants termination of up to two million dollars in retirement benefits which Brock earned over a four decade long career.

72.    In reality, BDO's decision to forfeit Brock's benefits was an impulsive and ill-informed decision.

73.    All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

20

## COUNT I
## RECOVERY OF PLAN BENEFITS PURSUANT TO ERISA
### §502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)
**(as to all Defendants)**

74.     Brock re-alleges and incorporates the allegations of paragraphs 1 through 73, as if fully set forth herein.

75.     Under the terms of the Partnership Agreement, Defendants agreed and promised to provide Brock with vested retirement benefits upon his retirement from BDO.

76.     The BDO Retirement Plan, as provided in Article VII of the Partnership Agreement, is an employee benefit plan within the meaning of ERISA, 29 U.S.C. § 1002(2)(A) and (3).

77.     Brock is a qualified participant in the BDO Retirement Plan, as provided in Article VII of the Partnership Agreement.

78.     Defendants have wrongfully denied the benefits due to Brock under the BDO Retirement Plan in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B) and (a)(3).

79.     Defendants' denial of benefits to Brock is arbitrary, capricious and unsupported by the evidence.

80.     All of the benefits due to Brock in accordance with the BDO Retirement Plan were and are vested and non-forfeitable, and Brock has duly complied with all the conditions in order to receive such retirement benefits.

21

81.    Defendants failed to provide Brock with adequate notice of the denial of his benefits, or a reasonable opportunity for a full and fair review of the denial of Brock's claim for benefits under the BDO Retirement Plan in violation of 29 U.S.C. § 1133.

82.    As a direct and proximate result of the foregoing, Brock has sustained damages, including pre-judgment interest thereon until the benefits are paid.

83.    Brock is entitled to recover his attorneys' fees and costs in bringing this action pursuant to 29 U.S.C. §1132(g)(1).

WHEREFORE, Plaintiff, RICHARD BROCK, demands judgment against Defendants, BDO and BDO RETIREMENT PLAN, as follows:

a.    Ordering Defendants to pay to Brock all benefits due to him under the BDO Retirement Plan as provided in Article VII of the Amended and Restated Partnership Agreement pursuant to ERISA §502(a)(1)(B), 29 U.S.C. § 1132(a)(l)(B);

b.    Awarding Brock prejudgment interest from October 13, 2023 until date of judgment and any post-judgment interest on the entire amount of benefits including pre-judgment interest, if applicable;

c.    Awarding Brock attorneys' fees, Court costs, and all other reasonable costs incurred pursuant to 29 U.S.C. § 1132(g)(1);

d.  Ordering Defendants to indemnify Brock for the expenses in bringing this claim; and

e.  Granting Brock such other and further relief as the Court may deem just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## 29 U.S.C. § 1132(a)(3) & 29 U.S.C. § 1133(2)
## (as to BDO)

84.  Brock re-alleges and incorporates the allegations of paragraphs 1 through 73, as if fully set forth herein.

85.  Pursuant to 29 U.S.C. § 1132(a)(3), a civil action may be brought by a participant for appropriate equitable relief to redress violations of ERISA.

86.  BDO owed a fiduciary duty to administer the BDO Retirement Plan solely in the interests of the plan's participant, Brock.

87.  BDO breached its fiduciary duty to Brock by:

(i)   cancelling his retirement benefits in a capricious and arbitrary manner in violation of ERISA;

(ii)  making material omissions during the claims and appeals process; and

(iii) Conducting and devising a limited appeals process that deprived Brock of any meaningful opportunity to contest the decision to deny him his retirement benefits.

23

88. Specifically, BDO withheld relevant emails relied upon by BDO's Board of Directors when terminating Brock's retirement benefits until September 30, 2024, eighty-four (84) days after BDO denied Brock's claim.

89. BDO's material omissions resulted in substantial prejudice to Brock's ability to defend himself in the claim and appeals process.

90. BDO's decision to terminate Brock's retirement benefits and deferred compensation was based on no legitimate evidence, arbitrary and capricious.

91. BDO's tailored appeals process prevented the appeal committee from reviewing the decision of BDO's Board of Directors regarding whether Brock violated the Partnership Agreement and therefore resulted in an appeals process that did not provide a full and fair review as required under federal law.

92. BDO's appeals process does not provide the full and fair review as required by ERISA.

93. BDO's breach of fiduciary duty resulted in the wrongful termination of Brock's retirement benefits.

94. Brock is entitled to recover his attorneys' fees and costs in bringing this action pursuant to 29 U.S.C. §1132(g)(1).

WHEREFORE, Plaintiff, RICHARD BROCK, respectfully requests this Court enter a judgment against Defendant, BDO USA, P.C., also known as BDO UA, P.C., Corp., formerly known as BDO USA, LLP, ordering Defendant to pay

Brock all benefits due to him under the BDO Retirement Plan, awarding Brock prejudgment interest from October 13, 2023 until date of judgment, plus post-judgment interest, attorneys' fees, and costs; or, in the alternative, enter a judgment finding that BDO's appeals process is violative of ERISA and that Brock did not violate the terms of the Partnership Agreement, and remanding this matter to the plan administrator for a full and fair review of the status of Brock's retirement benefits as well as such other and further relief as this Court deems just and proper.

Dated:  September 10, 2025.

**ADAMS & REESE LLP**

By: */s/ Thomas P. White*
Timothy W. Volpe (Lead Counsel)
Florida Bar No. 358185
tim.volpe@arlaw.com
richene.oliver@arlaw.com
Thomas P. White
Florida Bar No. 112776
tom.white@arlaw.com
Mateo C. Dayo, IV
Florida Bar No. 1049754
mateo.dayo@arlaw.com
501 Riverside Avenue, Suite 601
Jacksonville, FL 32202
(904) 355-1700 (telephone)
(904) 355-1797 (facsimile)
*Counsel for Plaintiff, Richard Brock*